O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NICHOLAS TELLES,                    )    NO. EDCV 11-00337-MAN
                                    )
               Plaintiff,           )
                                    )    MEMORANDUM OPINION
          v.                        )
                                    )    AND ORDER
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
               Defendant.           )
_____)

        Plaintiff filed a Complaint on March 8, 2011, seeking review of the
denial of plaintiff's application for a period of disability, disability
insurance benefits ("DIB"), and supplemental security income ("SSI").
On April 5, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c),
to proceed before the undersigned United States Magistrate Judge.  The
parties filed a Joint Stipulation on November 7, 2011, in which:
plaintiff seeks an order reversing the Commissioner's decision and
remanding this case for the payment of benefits or, alternatively, for
further administrative proceedings; and the Commissioner requests that
his decision be affirmed or, alternatively, remanded for further
administrative proceedings.

1

2

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

3

4      On October 25, 2007, plaintiff filed an application for a period of

disability, DIB, and SSI.  (Administrative Record ("A.R.") 8.)

Plaintiff, who was born on October 15, 1982 (A.R. 15),[1] claims to have

been disabled since November 1, 2005 (A.R. 8), due to schizophrenia,

schizoaffective disorder, depression, paranoia, anxiety, and panic

attacks.  (A.R. 22-24, 52, 58).

9

10      After the Commissioner denied plaintiff's claim initially and upon

reconsideration (A.R. 8, 52-56, 58-63), plaintiff requested a hearing

(A.R. 8, 64).  On October 14, 2009, plaintiff, who was represented by an

attorney, appeared and testified at a hearing before Administrative Law

Judge Joseph D. Schloss (the "ALJ").  (A.R. 8, 17-47.)  Medical expert

David Glassmire and vocational expert David A. Rinehart also testified.

(*Id.*)  On December 10, 2009, the ALJ denied plaintiff's claim (A.R. 8-

16), and the Appeals Council subsequently denied plaintiff's request for

review of the ALJ's decision (A.R. 1-3).  That decision is now at issue

in this action.

20

21                    ### SUMMARY OF ADMINISTRATIVE DECISION

22

23      The ALJ found that plaintiff met the insured status requirements of

the Social Security Act through March 31, 2008.  (A.R. 10.)  The ALJ

also found that plaintiff has not engaged in substantial gainful

26

_____

27      [1]   On the alleged disability onset date, plaintiff was 23 years
old, which is defined as a younger individual.  (*Id.; citing* 20 C.F.R.
28 §§ 404.1563, 416.963.)

activity since November 1, 2005, the alleged onset date of his disability. (*Id.*) The ALJ determined that plaintiff has the severe impairment of "schizophrenia/depression." (*Id.*) In so finding, the ALJ also determined that plaintiff's substance abuse disorder is not severe and has been in remission since 2007. (*Id.*) The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (A.R. 11.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). (A.R. 13.) The ALJ noted that "[t]his [work] should be performed in a low stress environment and involve simple repetitive tasks requiring little contact with supervisors, coworkers or a team, [and] in an environment where [plaintiff] is not responsible for the safety of others." (*Id.*)

The ALJ concluded that plaintiff is unable to perform his past relevant work.[2] (A.R. 14.) However, based on his RFC assessment and after having considered plaintiff's age, education,[3] work experience, and the testimony of the vocational expert, the ALJ found that jobs exist in the national economy that plaintiff could perform, including "floor

---

[2] In his decision, the ALJ noted that plaintiff has past relevant work as an "electrical wiring assembler (recreational vehicle)" and "auto body customizer." (A.R. 14.)

[3] The ALJ found that plaintiff has at least a high school education and is able to communicate in English. (A.R. 15.)

1  polisher," "stores laborer," and "kitchen helper."   (A.R. 15.)
2  Accordingly, the ALJ concluded that plaintiff has not been under a
3  disability, as defined in the Social Security Act, from November 1,
4  2005, through the date of the ALJ's decision.   (A.R. 16.)

6                       **STANDARD OF REVIEW**

8       Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's
9  decision to determine whether it is free from legal error and supported
10 by substantial evidence in the record as a whole.  <u>Orn v. Astrue</u>, 495
11 F.3d 625, 630 (9th Cir. 2007).   Substantial evidence is "'such relevant
12 evidence as a reasonable mind might accept as adequate to support a
13 conclusion.'"  *Id.* (citation omitted).   The "evidence must be more than
14 a mere scintilla but not necessarily a preponderance."  <u>Connett v.</u>
15 <u>Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003).   "While inferences from the
16 record can constitute substantial evidence, only those 'reasonably drawn
17 from the record' will suffice."  <u>Widmark v. Barnhart</u>, 454 F.3d 1063,
18 1066 (9th Cir. 2006)(citation omitted).

20      Although this Court cannot substitute its discretion for that of
21 the Commissioner, the Court nonetheless must review the record as a
22 whole, "weighing both the evidence that supports and the evidence that
23 detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Sec'y of</u>
24 <u>Health and Hum. Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*
25 <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).   "The ALJ is
26 responsible for determining credibility, resolving conflicts in medical
27 testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d
28 1035, 1039 (9th Cir. 1995).

                                   4

1    The Court will uphold the Commissioner's decision when the evidence
2    is susceptible to more than one rational interpretation. <u>Burch v.</u>
3    <u>Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may
4    review only the reasons stated by the ALJ in his decision "and may not
5    affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d
6    at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse
7    the Commissioner's decision if it is based on harmless error, which
8    exists only when it is "clear from the record that an ALJ's error was
9    'inconsequential to the ultimate nondisability determination.'" <u>Robbins</u>
10   <u>v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v.</u>
11   <u>Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d
12   at 679.

13

14                                **DISCUSSION**

15

16   Plaintiff claims that the ALJ did not: (1) consider properly the
17   opinion of his treating psychiatrist Maged M. Estafan, M.D.;
18   (2) consider properly the opinion of psychiatrist David Aryanpur, M.D.;[4]
19   (3) consider properly the opinion of consultative psychologist Kara
20   Cross, Ph.D.; (4) assess properly plaintiff's RFC; and (5) pose a
21   complete hypothetical to the vocational expert. (Joint Stipulation
22   ("Joint Stip.") at 2-10, 18-23, 25-29, 31-36.)
23   ///
24   ///
25   ///

26

27      [4]   In discussing the ALJ's alleged error in considering properly
     the opinion of Dr. Estafan, plaintiff also claimed that the ALJ did not
28   consider properly the opinion of Dr. Aryanpur. (A.R. 7-8.)

                                   5

**I.   The ALJ Did Not Consider Properly The Medical Opinions Of Drs. Estafan And Aryanpur and Should Revisit The Opinion Of Dr. Cross On Remand.**

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d), 416.927(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant.  Magallanes, 881 F.2d at 751.  When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.  *Id.*

A.   Dr. Estafan

Plaintiff claims that the ALJ failed to consider properly, and give specific and legitimate reasons for rejecting, the opinion of Maged M. Estafan, M.D., plaintiff's treating psychiatrist.

6

In his decision, the ALJ specifically referenced Dr. Estafan's January 23, 2009 Mental Work Capacity Evaluation and his June 9, 2009 Narrative Report. (A.R. 12.) The ALJ rejected Dr. Estafan's opinion, set forth in his January 23, 2009 Mental Work Capacity Evaluation, that plaintiff could not sustain work activity without frequent absences, because it "[wa]s not supported by any objective evidence." (A.R. 14.) In so finding, the ALJ noted that Dr. Estafan "rated [plaintiff] as moderate in the majority of areas which does not equate with the degree of limitation set forth by Dr. Estafan." (*Id.*)

In addition, the ALJ rejected Dr. Estafan's opinion that plaintiff was "unable to adapt to new or stressful situations" and "could not sustain . . . concentration or repetitive tasks for an extended period," because Dr. Estafan's treatment notes were "brief [and] conclusory" and his findings "[we]re inconsistent with [plaintiff]'s longitudinal clinical record at [Riverside County Department of Health] . . . ." (A.R. 12.) The ALJ noted that:

> Clinical notes of July 14, 2008, from the Riverside County Department of Health state that [plaintiff] had been absent from group therapy for two weeks due to his helping his parents paint and repair their house . . . . Previously, [plaintiff] was reported to travel to Las Vegas for a vacation during June 2008 . . . .

> Clinical notes of May 8, 2009, from the Riverside County Department state that [plaintiff] was sleeping well and doing fine. [Plaintiff] was reported to enjoy working with his

7

brother    detailing    cars.    His    mood,    affect,
attention/concentration, and speech were all described as
appropriate.  [Plaintiff] had no hallucinations, delusions,
sleep problems, appetite problems or drug/alcohol use . . . .
Previously, on January 23, 2009, a progress note reported that
claimant was doing well with his prescribed medication and
experiencing no side effects . . . .  As of September 9, 2008,
[plaintiff]'s levels of paranoia and anxiety were termed mild.
[Plaintiff] was reported to have had one hospitalization . . .
[in] 2005 . . . .

(*Id.*; internal citations omitted.)


The ALJ's reason for rejecting Dr. Estafan's opinion regarding
plaintiff's inability to sustain work activity without frequent absences
is neither specific nor legitimate.  As an initial matter, Dr. Estafan's
finding is supported by objective evidence -- *to wit*, his medical
findings and diagnoses as well as his multiple observations and
examinations of plaintiff throughout his medical treatment.[5]  Further,
while it is true, as the ALJ contends, that Dr. Estafan rated plaintiff
as having "moderate" limitations in the majority of work-related
activities, Dr. Estafan also found plaintiff to have "marked"

_____

[5]    As noted in <u>Huynh v. Astrue</u>, 2010 U.S. Dist. LEXIS 99002, at
*20, 2010 WL 3749270, at *7 (C.D. Cal. Sept. 20, 2010)(citations
omitted),  "[p]sychiatric  impairments  are  not  as  amenable  to
substantiation  by  objective  laboratory  testing  as  are  physical
impairments.   The  diagnostic  techniques  necessarily  will  be  less
tangible.   Mental disorders cannot be 'ascertained and verified' like
physical  ailments."   Accordingly,  "in  the  case  of  mental  illness,
clinical  and  laboratory  data  may  consist  of  'the  diagnoses  and
observations of professional psychiatrists and psychologists.'"   *Id.*
(citation omitted).

limitations, *inter alia*, in his ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" as well as in his ability to "sustain an ordinary routine without special supervision." (A.R. 398.) For purposes of the Mental Work Capacity Evaluation, "marked" was defined as: "Serious limitations in this area. The ability to function in this area is severely limited but not precluded." (*Id.*) Accordingly, in view of these findings of "marked" limitations -- findings that are supportive of Dr. Estafan's opinion regarding plaintiff's absences -- the ALJ's reasoning is unpersuasive.

The ALJ also rejects Dr. Estafan's opinion that plaintiff is unable to adapt to new or stressful situations, sustain concentration, and conduct repetitive tasks for an extended period, because Dr. Estafan's treatment notes are "brief [and] conclusory" and "inconsistent with [plaintiff]'s longitudinal clinical record" at the Riverside County Department of Health. (A.R. 12.) An ALJ may discredit a treating physician's opinion if it is conclusory, brief, and unsupported by the record as a whole or by objective medical findings. <u>Batson v. Comm'r of SSA</u>, 359 F.3d 1190, 1195 (9th Cir. 2004). Inasmuch as Dr. Estafan's January 23, 2009 Mental Work Capacity Evaluation is a checkbox form and his June 9, 2009 Narrative Report is a circle "[a]ll criteria that apply to this case" form, the ALJ properly found these evaluation forms to be brief and conclusory. However, contrary to the ALJ's conclusion, the findings contained therein are not inconsistent with the longitudinal records at the Riverside County Department of Health. While the ALJ properly cited periods when Dr. Estafan and/or social workers at the Riverside County Department of Health found plaintiff to be stable and

"doing fine," the ALJ appears to have ignored or failed to summarize properly other treatment notes which reflect that plaintiff was experiencing significant symptoms and/or limitations as a result of his impairment.

For example, the ALJ failed to mention Dr. Estafan's January 2, 2007 treatment note in which he found plaintiff to have:  an emotional state that was euthymic, depressed, and restricted; paranoid delusions; and visual and auditory perceptions/hallucinations.  (A.R. 290.)  In addition, the ALJ made no reference Dr. Estafan's November 6, 2007 treatment note in which he found plaintiff to have bizarre thought processes, paranoid delusions, and visual perceptions/hallucinations. (A.R. 283.)  Additionally, as properly noted by plaintiff, the ALJ did not cite Dr. Estafan's April 9, 2008 Narrative Report -- a report that largely mirrors his June 9, 2009 Narrative Report.  In the April 9, 2008 Narrative Report, Dr. Estafan found plaintiff to have:  paranoid thought that influences his actions and/or behaviors; visual hallucinations/delusions; impaired judgment; evidence of insomnia, depression, anxiety, isolation, inappropriate affect, avolition, and social withdrawal.  (A.R. 331.)  Further, Dr. Estafan found that plaintiff did not show an ability to:  "maintain a sustained level of concentration"; "sustain repetitive tasks for an extended period"; or "adapt to new or stressful situations."  (*Id.*)  Dr. Estafan also found that plaintiff had an "anxious" attitude and needed assistance with finances, and he characterized plaintiff's prognosis as "chronic." (*Id.*)  Lastly, while the ALJ noted that Dr. Estafan found plaintiff's levels of anxiety and paranoia were "mild" in his September 9, 2008 treatment note, the ALJ did not mention the fact that Dr. Estafan found

1  that plaintiff was still experiencing auditory and visual
2  perceptions/hallucinations (A.R. 388) and that he was assessed with a
3  GAF score of 50-55 (A.R. 385).[6]

4

5      Accordingly, the evidence, when fairly viewed, appears to show that
6  plaintiff's condition is recurrent in nature.  While at first blush Dr.
7  Estafan's findings seem to be inconsistent with some of the treatment
8  records, that inconsistency appears to be a result of the chronic and
9  recurrent nature of plaintiff's condition.  As such, the ALJ's reasoning
10  cannot constitute a specific and legitimate reason for rejecting Dr.
11  Estafan's opinion.

12

13      2.  Dr. Aryanpur

14

15      Plaintiff also claims that the ALJ did not consider properly the
16  opinion of examining psychiatrist David Aryanpur, M.D.

17

18      The ALJ rejected Dr. Aryanpur's opinion that plaintiff "suffered a
19  moderate to serious level of mental functional impairment," because Dr.
20  Aryanpur's opinion "was not supported by his report of objective
21  findings."  (A.R. 13.)  Specifically, the ALJ noted Dr. Aryanpur's

22

23      [6]    The GAF scale "[c]onsider[s] psychological, social, and
   occupational functioning on a hypothetical continuum of mental health-
24  illness."  *Diagnostic and Statistical Manual of Mental Disorders,* DSM-
   IV-TR, 34 (rev. 4th ed. 2000).  A rating of 41-50 reflects "[s]erious
25  symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent
   shoplifting) OR any serious impairment in social, occupational, or
26  school functioning (*e.g.*, no friends, unable to keep a job)."  *Id.*  A
   rating of 51-60 reflects "[m]oderate symptoms (*e.g.*, flat affect and
27  circumstantial speech, occasional panic attacks) OR moderate difficulty
   in social, occupational, or school functioning (*e.g.*, few friends,
28  conflicts with peers or co-workers)."  *Id.*

findings that: "[plaintiff] was found fully oriented with his intellectual functions, including memory and concentration, remaining intact"; (2) "[plaintiff] was reported to experience no hallucinations"; and (3) "[plaintiff's] thought process was termed normal and goal directed." (*Id.*; internal citations omitted.)

However, the ALJ did not summarize Dr. Aryanpur's report fairly. For example, the ALJ failed to address Dr. Aryanpur's findings that plaintiff has delusions (A.R. 403) and that his thought *content*, as opposed to his thought process, includes, "ideas of reference," "broadcasting," and "insertion" (A.R. 406). In addition, the ALJ made no mention of Dr. Aryanpur's finding that plaintiff had psychomotor slowing and blunted affect. (A.R. 405.) In sum, it appears that the ALJ attempted to discredit Dr. Aryanpur's opinion by improperly summarizing and/or ignoring competent evidence in his report. As such, the ALJ did not provide a specific and legitimate reason for discrediting Dr. Aryanpur's opinion.

3. <u>Dr. Cross</u>

Plaintiff also claims that the ALJ did not consider properly the opinion of consulting clinical psychologist Kara Cross, Ph.D.

On February 25, 2008, at the request of the Department of Social Services, Disability Determination Service, Dr. Cross performed a psychological evaluation of plaintiff. (A.R. 301-06.) In her clinical observations, Dr. Cross noted that plaintiff arrived on time and was a "neat and clean, well-groomed, personable young man[,]" who "was

cooperative and put forth his best effort." (A.R. 301.) Dr. Cross observed, *inter alia*, that plaintiff had: a flat mood and somewhat flat affect; unimpaired gross and fine muscle skills; no active delusions or perservations; no speech, hearing, or vision impairments; and adequate attention and concentration. (*Id.*)

During the evaluation, plaintiff reported to Dr. Cross that he had "a history of auditory and visual hallucinations and ha[d] been diagnosed with schizophreniform." (A.R. 301.) Additionally, plaintiff reported that "he developed panic attacks and some social fears and social withdrawal." (*Id.*) Plaintiff stated that he stopped working due to fear, and because he "ha[d] difficulty completing tasks," and c[ould not] take the stress of taking orders." (A.R. 302.)

Based on her examination, as well as the results of plaintiff's performance on various mental status examinations, Dr. Cross diagnosed plaintiff with schizophrenia and assessed plaintiff with a GAF score of 50. (A.R. 302-05.) Dr. Cross opined that plaintiff "would have difficulty maintaining employment for a 40-hour workweek 8-hour workday." (A.R. 305.) Dr. Cross opined, however, that plaintiff "would be able to handle a part-time work basis in a low stress, repetitive task work setting." (*Id.*) In so finding, Dr. Cross noted that plaintiff can understand and carry out simple tasks, but he has a blunt affect, poor social skills, and does not relate well to others. (A.R. 306.)

The ALJ rejected Dr. Cross's opinion that plaintiff's mental impairment restricts him from working on a full-time basis, because:

13

(1) Dr. Cross opined that plaintiff was only "moderately limited" with medication compliance; (2) "[plaintiff]'s limitation to a part[-]time position is a determination left to the Commissioner"; and (3) Dr. Cross did not have access to plaintiff's clinical records and did not cite any objective basis for her opinion. (A.R. 11.)

The ALJ's first reason for rejecting Dr. Cross's opinion is not specific and legitimate. In summarizing Dr. Cross's opinion and findings, the ALJ noted that Dr. Cross found plaintiff to be "moderately functional" when taking his medication. (A.R. 11.) The ALJ further noted that "[t]he term moderate, as used for [Dr. Cross's] evaluation, is defined as more than a slight limitation with the individual still able to function well." *Id.* However, the ALJ's interpretation of the term "moderate" is contained nowhere in Dr. Cross's evaluation. Further, his suggestion that plaintiff would still be able to "function well" is belied by Dr. Cross's statement, *in the very next two sentences*, that "[a] full-time position . . . would . . . [place] a tremendous amount of stress on [plaintiff] and he might deteriorate. A part-time position would work much better for [plaintiff]." (A.R. 306.) Accordingly, to the extent the ALJ rejects Dr. Cross's opinion because plaintiff can still "function well" when taking his medication, the ALJ's reasoning is unpersuasive.

The ALJ's second reason for rejecting Dr. Cross's opinion -- *to wit*, that "[plaintiff]'s limitation to a part-time position is a determination left to the Commissioner" -- is unavailing. Although a medical source statement on an issue reserved to the Commissioner, such as the determination of a claimant's ultimate disability, is not

14

determinative or entitled to special weight, the Commissioner is not free to disregard this information. Social Security Ruling ("SSR") 96-8p, 1996 SSR LEXIS 5, at *21 n.8. Instead, the ALJ is instructed to consider such opinions in adjudicating a disability claim. *Id.* Here, not only did Dr. Cross opine that plaintiff would be better suited for part-time work, but also in so finding, Dr. Cross opined that, because of plaintiff's mental impairment, a full-time position would place a tremendous amount of stress on plaintiff, which might cause him to deteriorate. (A.R. 306.) Rather than affording weight to Dr. Cross's opinion regarding plaintiff's limitations related to full-time work, the ALJ rejected it outright on the ground that Dr. Cross also rendered a non-dispositive opinion regarding ultimate disability. While this may constitute a specific reason for rejecting Dr. Cross's opinion, it is not a legitimate one.

Lastly, the ALJ rejected Dr. Cross's opinion that plaintiff could not sustain a full-time position, because Dr. Cross did not have access to plaintiff's clinical records and did not cite any objective basis for her finding. As an initial matter, Dr. Cross should have been provided with plaintiff's clinical records. 20 C.F.R. §§ 404.1517, 416.917 ("If we arrange for [a consultative examination or test, . . . [we] will also give the examiner any necessary background information about your condition.") However, despite the failure to provide Dr. Cross with the requisite and necessary background information, and contrary to the ALJ's finding, Dr. Cross's opinion regarding plaintiff's inability to sustain full-time work was based on objective evidence -- *to wit*, her observations of plaintiff as well as plaintiff's performance on various modes of psychiatric evaluation.

1    Nonetheless, the fact that Dr. Cross was not provided with
2    plaintiff's clinical records and, thus, may not have had a sufficiently
3    complete picture of plaintiff's condition, may constitute a specific and
4    legitimate reason for rejecting her opinion.  However, the Court need
5    not reach this issue, because this case is being remanded for the
6    reasons stated *supra*.  Accordingly, on remand, the ALJ, if appropriate,
7    should provide Dr. Cross with plaintiff's records so that she can render
8    an opinion based upon a *complete* review of the medical record.

9

10    **II.   The ALJ Must Review And Reconsider Plaintiff's RFC And**
11    **Plaintiff's Ability to Perform "Other Work."**

12

13    Based on the foregoing, there are several matters that the ALJ
14    needs to review and reconsider on remand.   As a result, the ALJ's
15    conclusion regarding plaintiff's RFC and plaintiff's ability to do other
16    work may change.  Therefore, the Court does not reach plaintiff's fourth
17    and fifth claims, *to wit*, that the ALJ erred in determining plaintiff's
18    RFC and failed to pose a complete hypothetical to the vocational expert.
19    To properly review and reconsider these issues, the ALJ needs to
20    reconsider the above-noted medical opinions.   Further, to the extent
21    that plaintiff's RFC is reassessed, additional testimony from a
22    vocational expert likely will be required to determine what work, if
23    any, plaintiff can perform.

24

25    **III. Remand Is Required.**

26

27    The decision whether to remand for further proceedings or order an
28    immediate award of benefits is within the district court's discretion.

*Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.   *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").   However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.   *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.   *See, e.g.,* Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011)(remanding for consideration of psychiatric opinion); Lay v. Astrue, 373 Fed. Appx. 804, 806 (9th Cir. April 5, 2010)(remanding for consideration of additional medical opinions that lent support for another physician's opinion); Stillwater v. Comm'r of Soc. Sec. Admin., 361 Fed. Appx. 809, 812 (9th Cir. Jan. 7, 2010)(remand for reconsideration of State agency physicians' opinions that were discredited because they were based on a treating physician's opinion that the ALJ rejected improperly).   On remand, the ALJ must correct the above-mentioned deficiencies and errors.

### CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for

further proceedings consistent with this Memorandum Opinion and Order.

        IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.


        **LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:   July 19, 2012

                                    _____
                                      MARGARET A. NAGLE
                                    UNITED STATES MAGISTRATE JUDGE